**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**MARK EVERETT BLOXSOM,**

     **Petitioner,**

**vs.**                         **Case No. 4:14cv93-MW/CAS**

**FLORIDA DEPARTMENT OF
CORRECTIONS,**

     **Respondent.**

                                   **/**

## REPORT AND RECOMMENDATION TO DENY § 2254 PETITION

Petitioner Mark Everett Bloxsom, proceeding pro se, filed a 28 U.S.C.
§ 2254 petition on August 5, 2013. ECF No. 1. On September 5, 2014,
Respondent filed an answer, with exhibits. ECF No. 13. Petitioner has not
filed a reply, although given the opportunity to do so. *See* ECF No. 12.

The matter was referred to the undersigned United States Magistrate
Judge for report and recommendation pursuant to 28 U.S.C. § 636 and
Northern District of Florida Local Rule 72.2(B). After careful consideration
of all issues raised, the undersigned has determined that no evidentiary
hearing is required for disposition of this matter. *See* Rule 8(a), R. Gov.
§ 2254 Cases in U.S. Dist. Cts. For the reasons stated herein, the

pleadings and attachments before the Court show that Petitioner is not entitled to federal habeas relief, and the § 2254 petition should be denied.

## <u>Procedural Background</u>

By information filed on December 29, 2009, in the Second Judicial Circuit, Leon County, in case number 09CF03499, the State of Florida charged Petitioner Bloxsom with two counts, in connection with events that took place on July 31, 2009:  (1) robbery, a second degree felony, in violation of section 812.13(2)(c), Florida Statutes; and (2) battery, a first degree misdemeanor, in violation of section 784.03(1)(a)1., Florida Statutes.  ECF No. 13[1] Ex. C at 5.[2]  On May 21, 2010, Bloxsom entered an open no contest plea to both counts.  *Id.* at 20-21.  The state trial court, Judge Terry P. Lewis, accepted the plea, adjudicated Bloxsom guilty, and sentenced him to fifteen (15) years in prison on Count 1 as a Prison

---

[1]Hereinafter, all citations to the state court record, "Ex. –," refer to exhibits submitted with Respondent's answer, ECF No. 13.

[2]In state court, the case was initially assigned to Judge Mark E. Walker.  Ex. C at 1-2.  On January 4, 2010, however, Judge Walker entered an administrative order transferring the case from Division B to Division A, because Bloxom's co-defendant's case was in Division A and they were to be tried together.  Ex. C at 13-14.  Judge Walker is now a federal district judge and assigned to this case.

Releasee Reoffender (PRR), and 166 days on Count 2, with credit for 166 days time served.  *Id.* at 25-34 (judgment and sentence).

Bloxsom appealed to the First District Court of Appeal (DCA), assigned case number 1D10-3126.  *Id.* at 37.  On June 22, 2010, Bloxsom filed a Notice of Voluntary Dismissal of his appeal.  Ex. E.  By order dated July 19, 2010, the First DCA dismissed the appeal pursuant to Florida Rule of Appellate Procedure 9.350(b).  Ex. F.

On September 7, 2010, Bloxsom filed a pro se motion for post-conviction relief pursuant to Florida Rule of Criminal Procedure 3.850 in the state trial court.  Ex. H at 1-13.  He filed an amended Rule 3.850 motion on June 10, 2011.  *Id.* at 16-32.  The state post-conviction court, Judge James C. Hankinson, held an evidentiary hearing on the Rule 3.850 motion on February 10, 2012, during which Bloxsom and his trial counsel, Roger Ruiz, testified.  *Id.* at 44-72 (transcript).  By order rendered that day, following the hearing, the court denied the Rule 3.850 motion for the reasons announced on the record, finding Bloxsom did not show ineffective assistance of counsel or that he was prejudiced by any alleged deficiency. *Id.* at 40.  Bloxsom appealed to the First DCA and filed an initial brief in case number 1D12-969.  Ex. I.  The State filed a notice that it would not file

an answer brief.  Ex. J.  The First DCA per curiam affirmed the case

without an opinion on January 22, 2013.  Ex. K; *see* Bloxsom v. State, 106

So. 3d 930 (Fla. 1st DCA 2013) (table).  The mandate issued on February

19, 2013.  Ex. N.  Bloxsom filed a motion for rehearing on April 24, 2013,

Ex. L, which the First DCA denied by order on May 22, 2013, Ex. M.

    As indicated above, on August 5, 2013, Bloxsom filed a § 2254

petition in this Court.  ECF No. 1.  Respondent filed a response, with

exhibits.  ECF No. 13.

## Analysis

    Pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and

Effective Death Penalty Act of 1996 (AEDPA), federal courts may grant

habeas corpus relief for persons in state custody.  Section 2254(d)

provides, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person
> in custody pursuant to the judgment of a State court shall not
> be granted with respect to any claim that was adjudicated on
> the merits in State court proceedings unless the adjudication of
> the claim –
>
> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  *See, e.g.,* Cullen v. Pinholster, 131 S.Ct. 1388, 1398 (2011); Williams v. Taylor, 529 U.S. 362 (2000); Gill v. Mecusker, 633 F.3d 1272 (11th Cir. 2011).  "This is a 'difficult to meet' and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'" Cullen, 131 S.Ct. at 1398 (quoting Harrington v. Richter, 131 S.Ct. 770, 786 (2011), and Woodford v. Visciotti, 537 U.S. 19, 24 (2002)).  This Court's review "is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen, 131 S.Ct. at 1388.

For claims of ineffective assistance of counsel, the U.S. Supreme Court has adopted a two-part test:

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland*, 466 U.S. at 687.  To demonstrate ineffectiveness, a "defendant

must show that counsel's performance fell below an objective standard of

reasonableness." *Id.* at 688.  To demonstrate prejudice, a defendant "must

show that there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been

different." *Id.* at 694.  "A reasonable probability is a probability sufficient to

undermine confidence in the outcome." *Id.*  For this Court's purposes,

importantly, "[t]he question 'is not whether a federal court believes the state

court's determination' under the Strickland standard 'was incorrect but

whether that determination was unreasonable – a substantially higher

threshold.'" Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quoting

Schiro v. Landrigan, 550 U.S. 465, 473 (2007)).  "And, because the

Strickland standard is a general standard, a state court has even more

latitude to reasonably determine that a defendant has not satisfied that

standard." *Id.*  It is a "doubly deferential judicial review that applies to a

Strickland claim evaluated under the § 2254(d)(1) standard." *Id.*

The Strickland test applies to ineffective assistance of counsel claims

arising out of the plea process.  Hill v. Lockhart, 474 U.S. 52, 57-58 (1985).

When a defendant has entered a plea while represented by counsel, as

here, "the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" *Id.* at 56 (quoting <u>McMann v. Richardson</u>, 397 U.S. 759, 771 (1970)).

For federal habeas purposes, a nolo contendere plea is treated the same as a guilty plea.  *See* <u>North Carolina v. Alford</u>, 400 U.S. 25, 35-37 (1970); *see also, e.g.*, <u>Florida v. Royer</u>, 460 U.S. 491, 495 n.5 (1983) (noting that, under Florida law, "a plea of nolo contendere is equivalent to a plea of guilty").  A defendant who enters a plea may not raise claims relating to alleged deprivations of constitutional rights that occurred prior to entry of the plea, but rather such a defendant may only attack the voluntariness of the plea by showing counsel's advice fell below the <u>McMann</u> standard:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process.  When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.  He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standard set forth in <u>McMann</u>.

Tollett, 411 U.S. at 267.  The U.S. Supreme Court has further explained:

> A plea of guilty and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence. Accordingly, when the judgment of conviction upon a guilty plea has become final and the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary.  If the answer is in the affirmative then the conviction and the plea, as a general rule, foreclose the collateral attack.

United States v. Broce, 488 U.S. 563, 569 (1989); *see* Mabry v. Johnson, 467 U.S. 504, 508 (1984) ("It is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked."); Blackledge v. Allison, 431 U.S. 63, 73-74 (1977) ("[T]he representations of the defendant, his lawyer, and the prosecutor at [the plea hearing], as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings.  Solemn declarations in open court carry a strong presumption of verity.  The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.").

The Eleventh Circuit has explained that "[a] reviewing federal court may set aside a state court guilty plea only for failure to satisfy due process: 'If a defendant understands the charges against him, understands the consequences of a guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea . . . will be upheld on federal review." Stano v. Dugger, 921 F.2d 1125, 1141 (11th Cir. 1991) (quoting Frank v. Blackburn, 646 F.2d 873, 882 (5th Cir. 1980) (en banc)).  "To be valid, a guilty plea must be made voluntarily and with full knowledge of the consequences."  Pardue v. Burton, 26 F.3d 1093, 1096 (11th Cir. 1994).

In this case, in his § 2254 petition, Bloxsom raises one ground, alleging his "plea was involuntarily induced by [1] ineffective assistance of trial counsel and [2] an inadequate plea colloquy and both errors combined to produce a deprivation of right to trial by jury and manifest injustice that must be corrected."  ECF No. 1 at 3-4.  Respondent asserts Bloxsom's claims lack merit and Bloxsom cannot demonstrate counsel was ineffective.  ECF No. 13 at 9-16.

Bloxsom raised his claims in his Rule 3.850 motion in state court.  Ex. H at 21-30.  Bloxsom argued his trial attorney, Roger Ruiz, provided:

1) misadvise concerning a sentencing possibility that would allow the trial court discretion to impose a Youthful Offender (YO) sentence less than a Prison Releasee Reoffender (PRR), if there were mitigating circumstances;

2) inaccurate and confusing advice as to the maximum and mandatory minimum penalties faced; and

3) failure to advise of an ineligibility to receive gain time awards and early release through certain programs while in prison.

*Id.* at 21.  Bloxsom asserted that this "resulted in an involuntarily entered plea and a manifest injustice."  *Id.*  Bloxsom asserted his attorney advised him that "the open plea for YO consideration was in Petitioner's best interest because it presented the only chance of a lesser sentence" and failed to advise him that his prior YO sentence barred another YO sentence.  *Id.* at 21-22.  As a result, Bloxsom "waived his right to trial by jury in an attempt to avoid the 15-year sentence as a PRR, entered an open plea, and ultimately received what he attempted to avoid, i.e., the only *legal* sentence that could have been imposed – 15 years as a PRR." *Id.* at 22.  Bloxsom argued that "any correct advice" his attorney gave him "in regard to the maximum and mandatory minimum penalties was entirely negated by the inaccurate advice he received about the YO sentencing possibility."  *Id.* at 23.  Bloxsom also asserted that the trial court's plea

colloquy was inadequate because the court failed to correct his counsel's

misadvise all three areas.  *Id.* at 26.  He further asserted the trial court also

failed to inform Bloxsom that no YO sentence possibility existed, a 15-year

PRR sentence was the only maximum and mandatory minimum penalty,

and he could not receive gain time.  *Id.*  He maintained that "the underlying

deficiency in [his] plea colloquy stems from Ruiz' ineffective assistance." *Id.*

He asserted that "because the erroneous advice was the sole basis for his

change in plea, the combination of err[ors] did indeed prejudice him," and if

he had known the YO sentence was not a possibility, he would not have

entered the no contest plea and would have gone to trial.  *Id.* at 28.

In denying his claims, the state post-conviction trial court questioned

Bloxsom and made the following findings:

> THE COURT: But don't you agree from reading this transcript,
> Mr. Bloxsom, Judge Lewis believed he could impose the
> youthful offender sentence?
>
> THE DEFENDANT: Yes, Your Honor.  But by Mr. Ruiz being
> ineffective in telling me that I was eligible for YO and bringing
> that to the Court is – you know, it started that whole circle, Your
> Honor.
>
> THE COURT: But the question is how were you harmed.
> That's the question.

THE DEFENDANT: Well, I would have proceeded to trial, Your Honor.

THE COURT: No, Judge Lewis believed he could give you a youthful offender sentence.  If he thought that was fair – I mean, he went off on – he didn't think it would be fair to again give you a youthful offender sentence.  It wasn't because he said he couldn't do it.

THE DEFENDANT: Yes, Your Honor.  But there was no possible way for him to impose that because of the PRR.  And, yes, if he would have imposed the youthful offender sentence, the State could have had the opportunity to appeal that and – appeal the sentence and bring me back here and have my YO removed and have me proceed under the PRR.

THE COURT:  All right.  I'm going to deny the motion for post conviction relief.  Mr. Bloxsom has a misunderstanding of what would have happened.  The State preserved no error so there could not have been an appeal.  Assuming, for the sake of argument, there was an appeal and the State prevailed, it would not have come back to impose the Prison Releasee Reoffender sentence.  It would have come back to set aside the plea because all parties were operating under a mistaken belief.  Therefore, Mr. Bloxsom was not in any way prejudiced.

I mean, I think it is true that everybody had a mistaken belief as to his eligibility.  But he was not prejudiced because Judge Lewis clearly considered it and made a discretionary decision not to impose youthful offender.  There has been no prejudice shown.

As to the gain time issue, I accept Mr. Ruiz's testimony, reject Mr. Bloxsom's testimony.  I'm not clear that he would have a legal basis, even if I did find that, because we're not talking about a misadvice situation.  His claim is that there was an absence of advice.  I have not researched that issue so I'm not

> 100 percent clear on that.  But I accept Mr. Ruiz's testimony,
> reject Mr. Bloxsom's testimony.  I will enter an order to this
> effect today.

*Id.* at 27-29.  As indicated above, the court entered a written order the

same day, denying the Rule 3.850 motion for the reasons stated on the

record and finding Bloxsom "failed to show that he received ineffective

assistance of counsel or that he was prejudiced by any alleged deficiency."

*Id.* at 40.  This ruling, affirmed on appeal without opinion, is entitled to

deference and review is limited to the record before the state court.  *See*

Cullen, 131 S.Ct. at 1388.

The exhibits in the record support the state post-conviction trial

court's findings and determination that Bloxsom did not prove that he

received ineffective assistance or that he was prejudiced by any alleged

deficiency.  Specifically, in the written plea, filed in open court on May 21,

2010, Bloxsom entered his no contest plea to the two charges with the

maximum penalty noted for each: 15 years for Count 1 and 1 year for

Count 2.  Ex. C at 20.  The signed, written plea also contains the following:

> My plea is entered with the acknowledgment and understanding
> of the following:
>
> (1) I understand that the judge will place me under oath to
> question me about this plea.  I must answer the judge's

questions truthfully, and if I make a false statement while under oath I could be prosecuted for perjury.

(2) I understand that a plea of not guilty denies my guilt, a plea of guilty admits my guilt, and a plea of no contest means that I will not contest the evidence against me.  I also understand that if the judge accepts this plea of guilty or no contest, there will be no trial and that I will be sentenced based on my plea.

(3)  I understand the nature of the charges to which I am pleading and I am aware of the maximum and minimum penalties.  My lawyer has informed me of the facts the State would have to prove before I could be found guilty, and discussed with me any possible defenses that could be raised in my case.  I am satisfied with my lawyer's advice and help.

(4)  I understand that if the judge accepts this plea, I give up the right to a trial, the right to require the State to prove the charge against me beyond a reasonable doubt, the right to have a jury decide whether I am guilty or not guilty, the right to see and hear the witnesses against me and to have my lawyer question them, the right to subpoena and present witnesses or other evidence or any defenses I may have, and to testify or remain silent as I choose.

(5)  I understand that by pleading guilty or no contest I am giving up the right to appeal of all matters relating to the final judgment including the issue of my guilt or innocence.  If the judge accepts this plea, the only issues I will be able to appeal are those relating to my sentence and the judge's authority to hear my case.  I understand that I have 30 days to appeal the court's judgment and sentence, and if I cannot afford a lawyer, one will be appointed for me.

. . . .

(8) I have read this entire form carefully, front and back, and I understand all of the rights and duties explained in this form.

I state to the Court that I am not under the influence of drugs or alcohol, that no one forced or threatened me to enter this plea, and that I am entering this plea freely and voluntarily.  I acknowledge that I am entering this plea because I believe it is in my best interest.

Ex. C at 20-21 (emphasis added).  Bloxsom's signature on the plea form thus indicates that he understood the nature of the charges, the maximum penalties, entered the plea voluntarily, and believed the plea was in his best interest.

In addition, the transcript of the plea hearing provides support for the state court's findings.  At the outset, defense counsel introduced himself and Bloxsom, explaining:

> Judge, I have spoken to my client.  Mr. Bloxsom is facing a 15 years PRR.  He is 20 years old, Judge.  He is a few days shy from being 21.
> And, Judge, we would like to proceed on an open plea under the youthful offender statute.  I have explained to Mr. Bloxsom that the Court will have the discretion to impose a sentence under the youthful offender statute, or to reject the sentence.  In the (inaudible) will be the 15 years PRR that he is facing.

Ex. D at 2.  The prosecutor explained that he had "researched that issue before and the sole way to get around PRR is by doing a youthful offender sentence."  *Id.*  Defense counsel again stated the court could "exercise that

discretion." *Id.* at 3.  The judge stated he had "no discretion unless he is

entering a plea." *Id.*  Defense counsel presented the plea form, indicated

he had explained the contents, and Bloxsom had signed it. *Id.*  Bloxsom

was sworn and the judge explained, "It would be what you call an open

plea.  There is no plea agreement." *Id.* at 4.  The judge noted the State

was asking for a PRR sentence of 15 years. *Id.*  The following occurred on

the record:

> THE COURT: . . . Now your attorney has indicated that he is
> going to argue on your behalf and ask me to enter a sentence
> pursuant to the youthful offender act, which I am sure you and
> he have talked about it which would give me a maximum of six
> years.
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: Whether a combination of incarceration,
> probation, all probation, or straight incarceration – I don't know
> what I'll do, I don't know about the facts of your case quite yet.
> And I'm going to listen, don't know anything about you.  I may
> or may not agree with that, so I don't know where we'll end up.
> But nobody has promised you what will happen, said well,
> Judge Lewis, if you do that he is going to give you youthful
> offender?
>
> THE DEFENDANT: No, Your Honor.
>
> THE COURT: Okay.  Has anybody promised you anything, at
> all?
>
> THE DEFENDANT: No, Your Honor.

*Id.* at 4-5 (emphasis added).  After additional questioning, the judge

accepted Bloxsom's plea as voluntarily entered and supported by a factual

basis.  *Id.* at 6.

During the sentencing portion of the proceeding, defense counsel

asked the judge "to exercise the discretion to sentence Mr. Bloxsom under

the youthful offender statute and at the same time, Judge, punish Mr.

Bloxsom, but with at least the chance for rehabilitation as opposed to

warehousing him at the age of 20 until he is 35 years old."  *Id.* at 7.

Defense counsel pointed out that, under the youthful offender statute, the

maximum sentence is 6 years and suggested that "if for example the Court

imposes a sentence of five years followed by one year probation and within

one year there is a new violation of the law, Judge, then the Court will not

be capped at the six-year sentence" and "can impose the remaining ten

years."  *Id.*  Defense counsel asked the judge to sentence Bloxsom to five

years, followed by one year of probation.  *Id.* at 7-8.  Defense counsel also

explained that Bloxsom "scores 22 months, Judge, but since it is a PRR

then, it puts him on the 15-year category."  *Id.* at 8.

The prosecutor explained that Bloxsom had previously been

sentenced as a youthful offender on two offenses – robbery by sudden

snatching and grand theft of a firearm – to 18 months in the Department of

Corrections and he was released in 2008.  *Id.* at 10-11.  The prosecutor

further explained, "There was also a trafficking in stolen property out of

Broward County for which he was released on July 1, or released on July

1, of 2009 and "then another grand theft for which he was released on July

1, 2009," from the Department of Corrections.  *Id.* at 11.  The prosecutor

indicated that "[t]wo of the cases it shows youthful offender, the other two it

shows just a regular sentence."  *Id.*  The prosecutor pointed out that

Bloxsom "in this case has committed the exact same offense for which he

was released from DOC" on July 1, 2009, and "[t]hese offenses occurred

on July 31, of 2009."  *Id.*  The prosecutor described the offense and argued

the judge should impose a PRR sentence:

> The fact that this crime occurred so soon after he was
> released from prison shows that he is not amendable to
> supervision, that he is not amendable to rehabilitation.  That
> time he served in prison when he got that youthful offender
> sentence before obviously didn't do the trick here.  Mr. Bloxsom
> has gone out and done the exact same thing.
>
> Your Honor, in this case, I think it is appropriate to do the
> PRR sentence.  This statute is unequivocal that – it says here,
> the Court must sentence the defendant as follows – and I have
> said that the lone exception is youthful offender, but he has
> been given his chance with the youthful offender statute.  And
> the PRR statute here is 775.082.  It's subparagraphs (9)(a)3.

*Id.* at 12-13.

Defense counsel argued that "if the Court exercises its discretion to do what we ask, either five years followed by one year probation or the maximum, Judge, six years, this will be the most that Mr. Bloxsom will serve" and "[i]t will get his attention," whereas "[t]he other option, Judge, is to warehouse him, you know and send in a young man of 20 years old and will come out a man of 35 years." *Id.* at 13-14. Bloxsom addressed the Court and said that he had changed in the past seven months, since been locked up for this offense. *Id.* at 15. Bloxsom stated:

> [T]his right here, these seven months it's not just the seven months, it's the 15 years I'm looking at. It's so much time it's like being scared straight, Your Honor. I know it doesn't show it because of my record, but that's exactly how I'm feeling, Your Honor.

*Id.*

The judge then imposed the sentence with the following explanation:

> THE COURT: Well, I appreciate what you say, Mr. Bloxsom and you seem sincere. You're obviously an intelligent person, you're articulate. And 15 years is a long time. If I had some other option, other than either or, I might be inclined to exercise it.
>
> The problem is as the State rightly points out that, you know, not only did you violate the law pretty soon after you got out, you did the exact same thing you were in for and you got a

youthful offender sentence.  And I'm afraid that, you know –
says well, I'm looking at this 15 years, scared straight.  You get
a lesser sentence, you got out, I forget real quick what
happened.  Yeah, you're thinking about it now.  And it may be
that you don't need that to do it.

But, the Legislature says somebody is in prison, they get
out and they do this, and they qualify.  And had you not had a
prior youthful offender, I might even consider that.  But I don't
think it's fair, from the State's standpoint, to do it again when
you did it.

So, I am going to follow the State's – well, I'm not going to
do a departure based on youthful offender.  So it wouldn't be a
mandatory 15-year sentence.  There is a five year – what's the
other charge, battery?

MR. CHOJNOWSKI [prosecutor]: There is a battery, he could
get credit time served, though.

THE COURT: That's credit time served, that's a misdemeanor.
It doesn't give me any pleasure because I think you, like I say,
you seem like you have a lot going for you.  But you did make a
mistake and now you're just going to have to pay for it.  Thirty-
five seems like a long time, but I mean at a young age – it
depends on where you are, I guess.

That's just the message I have to send.  So good luck, to
you.

*Id.* at 16-17.

Thus, as the state post-conviction court found, the trial judge believed

he could have given Bloxsom a YO sentence but determined such a

sentence was not appropriate in this case and, instead, imposed the PRR

sentence of 15 years.  Bloxsom never indicated during the plea and

sentencing hearing that defense counsel promised he would be sentenced

as a YO.  Moreover, from the statements quoted above, defense counsel

and the judge both indicated that if a PRR sentence was imposed,

Bloxsom, who was then 20 years old, would not get out of prison until he

was 35 years old.  This belies Bloxsom's allegations regarding the gain

time issue.  Indeed, as to this issue, the state post-conviction judge

accepted the testimony of defense counsel over that of Bloxsom; that court

sits as the fact-finder and determines witness credibility in Rule 3.850

proceedings.  *See, e.g.*, Smith v. State, 697 So. 2d 991, 992 (Fla. 4th DCA

1997); Fla. R. Crim. P. 3.850(d).  "Federal habeas courts have 'no license

to redetermine credibility of witnesses whose demeanor was observed by

the state court, but not by them.'" Consalvo v. Sec'y for Dep't of Corr., 664

F.3d 842, 845 (11th Cir. 2011) (quoting Marshall v. Lonberger, 459 U.S.

422, 434 (1983)).

       In particular, at the evidentiary hearing on the Rule 3.850 motion,

defense counsel testified that, in talking with Bloxsom, "we discussed going

to trial and we discussed the YO statute."  Ex. H at 9.  He testified that it

was his understanding that, even if Bloxsom went to trial, he would still be

eligible after trial for YO sentencing.  *Id.*  Defense counsel testified:

> Q Then I guess the – did you all discuss the best way to – did
> you discuss whether or not an open plea to the Court would be
> the most effective way to request a youthful offender sentence?
>
> A It was one of the options at that time open to Mr. Bloxsom.
> The other consideration was that he was about to turn 21 years
> old in about three or four days.  And that it was pretty much up
> to him whether he wanted to proceed, based on the
> understanding that the Court had the discretion to sentence him
> under the YO statute.
>
> Q Okay.  So you were operating under the time deadline of his
> age getting to the point where under the youthful offender
> statute he would no longer be eligible because he would be
> over 21; is that correct?
>
> A Yes, sir.
>
> Q And that was because of the recent change in the law that
> the Legislature had imposed; is that correct?
>
> A That is accurate, yes.
>
> Q Did you also inform him that a Court is more likely to exercise
> its discretion for a more lenient sentence if a person is to enter
> a straight up plea as opposed to going through a trial and then
> coming in and asking for one?
>
> A I mentioned that, in that the Court, based on his age, may
> exercise that discretion.  But all along I have advised Mr.
> Bloxsom that he was PRR.

*Id.* at 10.  Defense counsel testified that he, the prosecutor, and Judge

Lewis all believed the judge had the discretion to impose a YO sentence

and Judge Lewis elected not to use his discretion to impose that sentence,

"not because he didn't qualify, but just because he didn't elect to use his

discretion at that point."  *Id.* at 11.  Defense counsel testified that he

discussed with Bloxsom the rights he was giving up if he entered a plea

and he went over the plea form with Bloxsom.  *Id.* at 12-13.  Defense

counsel testified that Bloxsom never gave any indication that he did not

want to enter a plea.  *Id.* at 13.  The court also questioned defense

counsel:

> THE COURT: . . . Just in terms of strategy dealing with the
> Court, did you think you would have a better chance of getting
> a lenient sentence from Judge Lewis if your client plead straight
> up or if we went to trial?
>
> THE WITNESS: Since Mr. Bloxsom was PRR, and we were all
> under the impression that he qualified for the youthful offender,
> that, yes, I was under the impression that the Court may
> impose, even if the Court imposed the maximum at that time,
> which would have been better than the PRR.
>
> THE COURT: All right.  But my thinking – I mean, I've
> commonly heard attorneys tell me that they kind of feel like
> maybe they have a better chance to get the judge to go along
> with a lenient suggestion if they plead to the charge versus if
> they go to trial and contest the charges.  You know, I've had a

number of attorneys tell me that.  I don't know whether it is true
or not.  But did you share that belief?

THE WITNESS: To a point I did, based on the age of Mr.
Bloxsom at the time, and based on the time that he was facing
under the PRR.

*Id.* at 13-14.  Regarding the PRR sentence, defense counsel testified:

Q . . . I want to ask you about the – the issue of gain time or the
mandatory – and the mandatory sentencing under the PRR.
What did you tell Mr. Bloxsom regarding the PRR sentence?

A The notice of intent to seek enhanced penalty as a PRR was
filed at the end of December of 2009 by the State.  Throughout
– since that time, Mr. Bloxsom was aware that he was PRR.
And that – I did inform him as a PRR, he gets the maximum of
the penalty of the charge that he's facing.  In this case it was
robbery, and the maximum penalty was 15 years.  And as a
PRR he would be serving day for day with no gain time allowed.

Q So that would have been explained to him?

A Yes, sir.

*Id.* at 22-23.

Bloxsom received exactly what he sought – he entered an open plea

and the trial court considered the possibility of sentencing him as a YO.

The trial court ultimately rejected that possibility and instead sentenced

Bloxsom as a PRR to 15 years, which Bloxsom understood would happen

if the court did not sentence him as a YO.  The state post-conviction court

applied <u>Strickland</u> and determined Bloxsom did not prove that he received

ineffective assistance or that he was prejudiced by any alleged deficiency.

The state court's adjudication of Bloxsom's claims did not involve an

unreasonable application of clearly established federal law, nor was it

based on an unreasonable determination of the facts.  *See* 28 U.S.C.

§ 2254(d)(1)-(2).  *See, e.g.*, <u>Edwards v. Sec'y, Dep't of Corr.</u>, Nos.

3:11cv144-J-32JBT and 3:11cv145-J-32JBT, 2015 WL 898735 (M.D. Fla.

Mar. 3, 2015) (order denying § 2254 petition by Florida state inmate who

alleged he received ineffective assistance of counsel because attorney

erroneously advised him that if he entered guilty pleas, he would be

sentenced as YO).

## Conclusion

Based on the foregoing, Petitioner Mark Everett Bloxsom is not

entitled to federal habeas relief.  The § 2254 petition (ECF No. 1) should be

denied.

## Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United

States District Courts provides that "[t]he district court must issue or deny a

certificate of appealability when it enters a final order adverse to the

applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  Rule 11(b) provides that a timely notice of appeal must still be filed, even if the court issues a certificate of appealability.

Petitioner fails to make a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (explaining substantial showing) (citation omitted). Therefore, the Court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  The parties shall make any argument as to whether a certificate should issue by objections to this report and recommendation.

Leave to appeal in forma pauperis should also be denied.  *See* Fed. R. App. P. 24(a)(3)(A) (providing that before or after notice of appeal is filed, the court may certify appeal is not in good faith or party is not otherwise entitled to appeal in forma pauperis).

## Recommendation

It is therefore respectfully **RECOMMENDED** that the Court **DENY** the § 2254 petition (ECF No. 1).  It is further **RECOMMENDED** that a certificate of appealability be **DENIED** and that leave to appeal in forma pauperis be **DENIED**.

**IN CHAMBERS** at Tallahassee, Florida, on January 25, 2016.

S/  Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**